# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| RAYTHEON COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:15-CV-01554-JRG-RSP |
| | § | |
| CRAY, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Cray's Motion to Compel 30(b)(6) Testimony [Dkt. # 109] is before the Court. In the Motion, Cray moves the Court to compel Raytheon to (1) provide corporate testimony about two topics in Cray's Rule 30(b)(6) notice to Raytheon; (2) produce documents regarding Silicon Graphics, Inc.'s 2007 offer to purchase the asserted patents; and (3) produce documents identifying the architecture, features, and revenue from a system Raytheon sold to the National Oceanic and Atmospheric Administration (NOAA).

After reviewing the parties' briefing and hearing arguments of counsel, Cray's Motion [Dkt. # 109] is GRANTED-IN-PART.

## I. BACKGROUND

### A. Rule 30(b)(6) Topics 40–41

In September 2016, Cray served Raytheon with a Rule 30(b)(6) notice including topics about commercialization and profitability of Raytheon's systems covered by the

asserted patents. Mayer Decl. [Dkt. # 109-1] ¶ 2. Topic 40 requested testimony about "Raytheon's plans or attempts to commercialize or otherwise monetize the Alleged Inventions claimed in the Patents-In-Suit or Related Patents/Applications." *Id.* Topic 41 requested testimony about "Raytheon's revenues earned and expenses incurred relating to its development and commercialization of the Patents-in-Suit and any Covered Products or Competing Products." *Id*.

Raytheon produced two designees (Jane Chappell and Mark White) who provided testimony on these topics, but there were questions they could not answer. Neither, for example, could provide details about an allegedly covered system Raytheon sold to the NOAA in 2006. *See, e.g.*, White Dep. 174:20–175:8; Chappell Dep. 196:12–198:15. Both had difficulty with questions about Raytheon's attempts to license the asserted patents. *See, e.g.*, Chappell Dep. 78:19–79:11, 96:4–97:11, 116:3–13; White Dep. 213:14–21 (testifying he didn't know if there were any licensing fees exchanged under two license agreements). And neither could identify which Raytheon systems, hardware, and software were covered by the asserted patents. *See, e.g.*, Chappell Dep. 122:13–18; White Dep. 208:23–209:1.

### B. The Documents at Issue

In addition to the 30(b)(6) issue, Cray contends Raytheon has not produced documents related to the 2006 NOAA sale. Cray's Mot. [Dkt. # 109] at 2. Raytheon responds that, prior to the deposition of Chappell, Raytheon produced many documents describing the patented technology of the NOAA system. Stringfield Decl. [Dkt. # 116-1] ¶ 14.

Following Chappell's deposition, Raytheon searched its files again and produced all remaining documents describing patented technology of the NOAA system. *Id*. Raytheon also provided updated financial disclosures, including revenue numbers related to the NOAA system. *Id*. ¶ 15.

Cray also contends Raytheon has not produced documents describing the contemplated 2007 sale of certain technology to Silicon Graphics, including several documents summarizing proposed terms of such deal. *Id*. ¶ 16. Following Chappell's deposition, Raytheon again searched its files, but did not find additional documents describing the contemplated 2007 sale. *Id*.

For the most part, Raytheon's most recent responses to these document requests satisfy Cray, as these issues were not raised during the Court's hearing on Cray's motion. There remain, however, two outstanding issues: (1) a written offer to purchase the asserted patents in 2007 or 2008; and (2) documents related to Raytheon's licensing efforts. Hr'g Tr. [Dkt. # 222] 72:8–75:24.

## II. APPLICABLE LAW

A party served with a Rule 30(b)(6) deposition notice must respond in one of two ways: (1) designate a person to testify at a deposition, or (2) move for a protective order. *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003). If the deponent designates a person to testify, the deponent must prepare that person to answer the questions posed about the subject matter. *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) ("The deponent must prepare the designee to the

extent matters are reasonably available, whether from documents, past employees, or other sources."); *see also Bowoto v. ChevronTexaco Corp.*, No. C 99–02506 SI, 2006 WL 294799, at *1 (N.D. Cal. Feb. 7, 2006) ("The corporation has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition."). If a designee is unable to adequately respond to relevant questions on listed subjects, the responding corporation has a duty to timely designate additional, supplemental witnesses as substitute deponents. *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 127 (M.D.N.C. 1989).

Concerning documents, a party may obtain discovery regarding any non-privileged documents relevant to any party's claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 34.

## III. DISCUSSION

### A. The Sufficiency of Raytheon's 30(b)(6) Testimony on Topics 40–41

The Court reviewed the transcripts of both depositions. Based on that review, the Court agrees Cray is entitled to an additional, limited 30(b)(6) deposition on certain subject matter, not to exceed three hours in length.

#### 1. The Covered Systems

The Court finds Raytheon's designee on Topics 40–41 cannot be fully prepared to testify without first understanding what hardware and software Raytheon contends is covered by the asserted patents. The transcripts, however, show neither designee had an understanding of Raytheon's position on that question. White, for example, did not have

knowledge concerning what hardware and software was sold to the NOAA or how much money was paid for the system. *See* White Dep. 174:20–176:5, 177:24–178:6. Nor could he tie particular hardware or software to specific patents. *See, e.g.*, *id.* 173:25–174:2. White also relied extensively on his conversations with another Raytheon employee, Gary Early, as to what systems the asserted patents cover, but the transcript is unclear as to whether that is Raytheon's position or merely White's personal belief based on his conversation with Early. *See, e.g.*, White Dep. 174:20–176:5.

To address this deficiency in Raytheon's testimony, Cray may re-examine Raytheon about what Raytheon systems, hardware, and software are covered by the asserted patents.[1] This knowledge is fundamental to Topics 40–41 because without it Cray cannot tie revenue, expenses, and commercialization efforts to specific patents. Of course, Raytheon may not know what systems, hardware, or software are covered by the asserted patents, but if that is Raytheon's position, it should be made clear during the deposition.

Cray may also re-examine Raytheon concerning (1) Raytheon's position about adequate compensation for the eMesh assets, and to what extent the eMesh assets include the asserted patents, *see* White Dep. 197:23–198:21, and (2) what composed the system sold to the NOAA and how much the NOAA paid for the system, *see id.* 174:20–175:8.

Prior to any such deposition permitted by this Memorandum and Order, Raytheon's designee should, at a minimum, review and understand Raytheon's interrogatory responses

---

[1] Raytheon's designee, however, need not address the reasoning behind *why* each system is covered by the asserted patents. That is a different topic not at issue in Cray's motion.

concerning which Raytheon systems embody claims of the asserted patents and any disclosures made by Raytheon under P.R. 3-1(f). But Raytheon's designee need not understand the basis for Raytheon's position that certain systems are covered, as that is not required for testimony regarding Topics 40–41.

### 2. Licensing

The only persuasive argument about the sufficiency of Raytheon's testimony concerning licensing related to its withholding of information under the work product doctrine. Hr'g Tr. [Dkt. # 222] 73:5–13; *see, e.g.*, White Dep. 276:16–277:4. The parties have not briefed the Court on the propriety of Raytheon's assertion of the work product doctrine. The Court agrees, however, that Cray is entitled to an additional deposition about any documents produced by Raytheon under Part II.B.2 of this Memorandum and Order.

## B. The Documents.

### 1. The 2007 or 2008 Purchase Agreement

Within 7 days of this Memorandum and Order, Raytheon must either (1) produce this purchase agreement, or (2) certify to Cray that it has searched for this specific document and that it does not exist or cannot be located.

### 2. IPLC Documents

Within 7 days of this Memorandum and Order, Raytheon will produce (to the extent not already produced) all documents relating to Raytheon's engagement of IPLC in connection with the asserted patents and IPLC's performance of its duties pursuant to that engagement. Raytheon must log any withheld documents or communications so the Court,

if necessary, may resolve any disputes. If Cray then wishes to challenge Raytheon's assertions of privilege or the work product doctrine, it must file a motion on that issue at least ten days before the pretrial conference.

## IV.  CONCLUSION

Cray's Motion [Dkt. # 109] is **GRANTED** to the extent indicated herein, but otherwise **DENIED**.

**SO ORDERED.**

**SIGNED this 19th day of June, 2017.**

                                                ROY S. PAYNE
                                                UNITED STATES MAGISTRATE JUDGE